# United States District Court
# District of Massachusetts

DANIEL E. LAFRENIERE,
    Plaintiff,

v.                                   CIVIL ACTION NO. 04-40070-RBC

UNITED STATES OF AMERICA,
    Defendant.

## *MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS (#19)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On May 3, 2004, Daniel E. Lafreniere ("Plaintiff" or "Lafreniere") filed a civil action against the United States of America ("Defendant" or "Government") pursuant to the Federal Tort Claims Act ("FTCA"). (Complaint #1) The Plaintiff alleges that the Federal Bureau of Investigation ("FBI") has failed to return a motorcycle ("Property") seized from his premises on April 12, 1996. (#1) All three counts of the complaint arise out of the purported failure to

return the Property. (#1, ¶¶25, 33-38)

Lafreniere alleges in the first count that the Government negligently lost the Property in question. (#1, ¶¶25, 33-38) In the second count it is alleged that the Government wrongfully converted the Property in question and failed to return it. (#1, ¶¶25, 33-38) Lastly in the third count violation of an implied contract for bailment is alleged. (#1, ¶¶25, 33-38) As damages the Plaintiff seeks sixteen thousand dollars plus interest and costs. (#1, ¶¶25, 33-38)

The Defendant responded to the Plaintiff's complaint by filing a motion to dismiss. (Defendant's Motion to Dismiss #19) The primary argument advanced in the dispositive motion is that the Plaintiff's tort claims are time-barred because they were not presented within the two-year statute of limitations requirement. The Government further argues with respect to count three that the Court does not have jurisdiction over the plaintiff's bailment claim.

## II. Facts

The facts as recited hereinafter are gleaned from the allegations of the complaint.

On April 11 and 12, 1996, FBI agents seized a motorcycle along with

several other items from the Plaintiff's premises pursuant to a search warrant. (#1, ¶6)  The Plaintiff contends that the motorcycle was 95% complete.[1] (#1, ¶6)  On November 5, 1998, Lafreniere was convicted of conspiracy to possess with intent to distribute heroin and acquitted of charges related to stolen property. (#1, ¶10)

On November 23, 1998, after the conclusion of his criminal trial, Lafreniere filed a motion for return of all items seized.  (#1, ¶11)  The Government responded on December 1, 1998, arguing, *inter alia*, that the motion should be denied because the plaintiff could not legally possess stolen parts or parts with altered VIN numbers. (#1, ¶12)  On December 3, 1998, the Court denied Lafreniere's motion in part without prejudice and directed counsel to consult regarding the voluntary return of the seized property. (#1, ¶13)

The Plaintiff filed another *pro se* motion for the return of seized property on October 16, 2001, and the Government responded on October 19, 2001, reiterating its position that the Plaintiff could not legally possess stolen parts. (#1, ¶¶15, 16)  On January 11, 15, and 16, 2002, the FBI returned several of the seized items to Lafreniere's brother. (#1, ¶17)  Lafreniere claims that the

---

[1] The Government claims that the item in question was partially completed and consisted of renumbered stolen parts. (#19, p. 2)

motorcycle which is the subject of this complaint was never returned. (#1, ¶17)

On January 31, 2002, the Government filed a Supplemental Response to Lafreniere's motion for return of property informing the Court that the seized items had been returned in January and that "[t]he FBI is still seeking to locate ... one remaining item requested by the Defendant.  The government believes that [this item] will be located...". (#1, ¶18)  The Court issued an Order Re: Return of Property on April 12, 2002, which described the Property as a "rolling chassis with various components" and ordered the Government to submit a report by May 10, 2002, stating its position with respect to the Property in question. (#1, ¶20)  On May 16, 2002, the FBI responded that it "believe[d] that all items have been returned to [Plaintiff's] representative except certain contraband motorcycle parts." (#1, ¶21)

The Government filed a report on September 9, 2002 after conducting a search for the item in question, asserting that "'no complete motorcycle' was taken from the Plaintiff's residence and that 'any motorcycle would already have been returned to,' the Plaintiff." (#1, ¶22)  On September 23, 2002, the Government filed a final status report stating that the FBI did not have the completed motorcycle the plaintiff was seeking and the plaintiff may therefore pursue civil remedies if he chooses. (#1, ¶23)

By letter dated October 2, 2002, Lafreniere was advised that the Court could no longer offer help in resolving the issue of the missing motorcycle, as the "'long-completed criminal case' [was] not the proper forum to resolve this'" factual dispute or through which to obtain an appropriate remedy. (#1, ¶24 and Exh. B)

On or about June 30, 2003, the Plaintiff filed an administrative claim for damages pursuant to the FTCA on a Standard Form 95 ("SF-95"). (#1, ¶25 and Exh. C). The Plaintiff received a letter from the FBI on March 30, 2004, stating that

> we have reviewed the facts surrounding this matter ...Our review indicated that there was no negligence or wrongful conduct by an FBI employee in this case...If you are dissatisfied with this determination, you may file a lawsuit against the United States in an appropriate United States District Court within six months of [March 24, 2004].

Complaint #1, ¶30 and Exh. F.

On May 3, 2004, the plaintiff filed this *pro se* complaint pursuant to the FTCA, 28 U.S.C. §2401, alleging that the Government (1) negligently lost his property, (2) wrongfully converted his property and failed/refused to return it, and (3) became the bailee of the property and failed/refused to return it. (#1,

¶¶ 25, 33-38). Lafreniere seeks sixteen thousand dollars in damages plus interest and costs. (#1, ¶¶33-38)

The Government responded to Plaintiff's complaint by filing a motion to dismiss for lack of subject matter jurisdiction. (#19) The Government argues that (1) the Plaintiff is barred from bringing this claim because it was not presented within the two-year statute of limitations requirement and (2) the Court does not have jurisdiction over the plaintiff's bailment claim. (#19, p. 11).

### III. Analysis

#### A.  The Legal Standard

Pursuant to Rule 12(b)(1), Fed. R. Civ. P., a defendant may move to dismiss an action based on lack of federal subject matter jurisdiction. Because federal courts are considered courts of limited jurisdiction, "federal jurisdiction is never presumed." *Viquiera v. First Bank,* 140 F.3d 12, 16 (1 Cir., 1998). Instead, "'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Murphy v. United States,* 45 F.3d 520, 522 (1 Cir.), *cert. denied,* 515 U.S. 1144 (1995) (quoting *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 60 (1 Cir.), *cert. denied,* 510 U.S. 823 (1993)).

In ruling on a motion to dismiss for lack of jurisdiction, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of plaintiff." *Aversa v. United States,* 99 F.3d 1200, 1210 (1 Cir., 1996); *Murphy,* 45 F.3d at 522. That is not to say that this leniency eliminates the plaintiff's burden of proving an appropriate jurisdictional basis. Indeed, a plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'" *Murphy,* 45 F.3d at 422 (quoting *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1 Cir., 1993)).

"It is elementary that the United States, as sovereign, is immune from suit unless it has consented to be sued." *Skwira v. United States,* 344 F.3d 64, 72, (1 Cir., 2003), *cert. denied,* 542 U.S. 903 (2004). However, the FTCA expressly waives the Government's immunity, allowing individuals to sue the Government "for injuries or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." Title 28 U.S.C. §1346(b); *Skwira,* 344 F.3d at 73. A limitation within the statute states that "[a] tort claim against the United States shall be forever barred unless it is presented in writing

to the appropriate Federal agency within two years after such claim accrues." Title 28 U.S.C. §2401(b); *Skwira*, 344 F.3d at 73. This limitation is to be strictly construed. *Skwira*, 344 F.3d at 73.

To expedite the filing of an administrative claim, the Department of Justice has developed an SF-95, on which the claimant need only indicate (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages. *Skwira*, 344 F.3d at 70. It is well settled that "the timely filing of an administrative claim pursuant to §2401 is a jurisdictional prerequisite to filing suit under the FTCA." *Skwira*, 344 F.3d at 71. Thus the failure to comply with the applicable statute of limitations means that the Court lacks subject matter jurisdiction and the case must be dismissed. Fed. R. Civ. P. 12(b)(1); *Skwira*, 344 F.3d at 71.

### B.  Accrual of the Tort Action

A common issue in many tort claims against the Government is the date on which the plaintiff's claim accrued. *Skwira*, 344 F.3d at 73. The First Circuit has come to the conclusion that

> in line with the best precedents, ... a claim accrues under the FTCA once a plaintiff knows, or in the exercise of reasonable diligence should know (1) of her injury and (2) sufficient facts to permit a reasonable

> person to believe that there is a causal connection between the Government and her injury.

*Skwira*, 344 F.3d at 78.[2]

However, "a plaintiff may not bury his/her head in the sand. If he/she fails to undertake a reasonably diligent investigation into the cause of injury, the law will impute to him/her an awareness of any knowledge that he/she would have uncovered if she had undertaken that inquiry." *Skwira*, 344 F.3d at 77. Having determined that knowledge of the injury triggers the accrual of a claim, the Court has further concluded that although the degree of knowledge of the injury will vary with the circumstances of each case, something less than definitive knowledge is required. *Skwira*, 344 F.3d at 78.

In the case at bar, the Plaintiff is claiming that the Government negligently lost and/or wrongfully converted his property, thus resulting in injury. (#1, ¶¶33-36) The Plaintiff filed an administrative claim on August 29, 2003. (#1, ¶ 25) The Government contends that the Plaintiff's claim is time-barred because the claim accrued on either April 1, 1996 when his property was

---

[2] The traditional rule was that a plaintiff's claim would have accrued at the time of his/her injury. However, the standard has evolved, and in *United States v. Kubrick*, 444 U.S. 111 (1979), the Supreme Court recognized that a discovery rule applied in the context of medical malpractice claims. Further, many other courts have applied versions of *Kubrick's* discovery rule in other settings and have extended the reasoning of *Kubrick* far beyond the medical malpractice realm. For example, in *Skwira* the First Circuit developed a two-prong test to determine when a claim accrues. *Skwira*, 344 F.3d at 75-77.

seized, or at the very latest in December of 1998 when the Government first stated that it could not legally return the motorcycle because it consisted of stolen parts. (#19)  In the Government's view, any administrative filing submitted after December of 2000 would be too late. (#19)  Furthermore, the Government argues that even with an extremely liberal reading of Plaintiff's complaint, his mistaken belief that his claim accrued on or about January 2002 when the FBI returned to him the other items seized does not establish a new cause of action. (#19)

Conversely, Lafreniere claims that his cause of action accrued when the Defendant made it clear that the Government would not and could not return the Property in question and that Plaintiff should seek civil recovery. (Plaintiff's Response to Defendant's Motion to Dismiss #21, pp. 3-4)  The Plaintiff takes the position that the statute of limitations is designed to promote justice by preventing surprises through the revival of "claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared," and such is not the case here. (#21, pp. 3-4); *See Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342 (1944).  To the contrary, the Plaintiff states that he filed the administrative claim as soon as the

FBI indicated that they were unable to locate the bike and that he should seek civil remedies. (#21, pp. 3-4)

In *McIntyre,* the First Circuit articulated its view regarding the accrual of an FTCA claim:

> The test for whether a plaintiff should have discovered necessary facts is an objective one. Courts look first to whether sufficient facts were available to provoke a reasonable person in the plaintiff's circumstances to investigate further. 'A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, but such suspicions do give rise to a *duty to inquire* into the possible existence of a claim in the exercise of due diligence.' Once a duty to inquire is established, the plaintiff is charged with the knowledge of what he or she would have uncovered through a reasonably diligent investigation. The next question is whether the plaintiff, if armed with the results of that investigation, would know enough to permit a reasonable person to believe that she had been injured and that there is a causal connection between the government and her injury. Definitive knowledge is not necessary. This inquiry is highly fact- and case-specific, as are the pertinent questions to ask.
>
> In *Attallah,* the plaintiffs learned in September 1982 that the decomposed body of their courier, who had been transporting almost $700,000 of their money to Puerto Rico, had been found. Over four years later, two Customs agents were indicted for the robbery and murder of the courier. The court found that the plaintiffs had filed a timely administrative claim

>against the United States because their claim accrued when the Customs agents were indicted, not when the courier's body was found. The court focused on the fact that aside from the indictment, the only information that the plaintiffs had available about the whereabouts of their courier was a Customs Service document showing that their courier had been processed at the airport customs office and then left the premises.

*McIntyre v. United States*, 367 F.3d 38, 52 (1 Cir., 2004)(emphasis in original).

In the instant case, the only information that Lafreniere had available to him regarding the whereabouts of his motorcycle were the reports the FBI provided to him and the Court. When the Plaintiff filed his motions for return of seized property, the FBI explained that they could not comply because the Property in question consisted of stolen parts. (#1, ¶¶11, 15)  Lafreniere disputed this contention pointing to FBI testimony given at his trial where an agent stated that "none of the items seized from the plaintiff's premise on April 12, 1996 were illegal or stolen."  (#1, ¶9)

The fact that Lafreniere and the Government disagreed as to whether the motorcycle consisted of stolen parts would not provoke a reasonably diligent person in the circumstances to believe that the Property was negligently lost or wrongfully converted. *Skwira*, 344 F.3d at 77.   Indeed, in light of the Government's repeated assertions that the Property could not be returned

because it consisted of stolen parts, a reasonably diligent person in the circumstances would likely believe that the Property remained within the care and control of the Government. Such a belief is further justified given that the issue arose in connection with Lafreniere's criminal investigation and trial when it could reasonably be believed that the Government was privileged in holding such Property and that no injury had resulted. Given these circumstances, a reasonable person in Lafreniere's position would not be provoked to investigate further. *McIntyre*, 367 F.3d at 52.

Moreover, if there was reason to know that the Government had wrongfully converted or negligently lost the Property, presumably the Court would have informed Lafreniere in 1996 that he should seek civil remedies. The fact that the Court directed Lafreniere in 2002 to seek other legal avenues for remedies supports the conclusion that from the time the Property was seized in 1996 until 2002, there were not "sufficient facts [] available to provoke a reasonable person in the plaintiff's circumstances to investigate further." Therefore, Lafreniere's FTCA claim did not accrue in December of 1998 when the Government stated its position that it would not return the motorcycle because it consisted of stolen parts.

Following the standard set forth in *Skwira* and the reasoning used in *McIntyre*, Lafreniere's FTCA claim should accrue only when a reasonably diligent person in the Plaintiff's circumstance would have enough information to permit him/her to believe that the motorcycle in question was lost by the FBI. *McIntyre*, 367 F.3d at 52; *Skwira*, 344 F.3d at 77. The absolute earliest time that Lafreniere, or a reasonable person in his situation, could possibly have believed that the Property in question had been lost would have been between January 11-16 of 2002. (#1, ¶17) It was at that time that the FBI returned several items to Lafreniere's brother although, according to Lafreniere, the motorcycle subject to this complaint was not returned to him. (#1, ¶17)

At every point prior to January of 2002, the Government had consistently informed the Plaintiff that the motorcycle was not being returned because it consisted of stolen parts. (#1, ¶¶12, 16) The Defendant never mentioned that it could not account for the item in question. Lafreniere is not contending that his Property was negligently withheld from him. Rather, he is contending that the Government negligently lost and wrongfully converted his Property. (#1, ¶¶ 33-36) Thus, Lafreniere's claims against the FBI accrued when a reasonably diligent person in his circumstances could or should have known that his

Property was negligently lost or wrongly converted by the FBI because that is the injury he is claiming to have sustained. *McIntyre*, 367 F.3d at 52. As stated above, the earliest point in time that this could have occurred would have been in January, 2002, when the Government returned several of the seized items. (#1, ¶17) Since the property in question was not one of these items, it was at this point that Lafreniere may have had sufficient facts available to him to put him on notice to investigate further. [3]

Given that January of 2002 was the earliest possible date on which Lafreniere's claims against the FBI began to accrue, the administrative claim filed on August 29, 2003 was timely because it fell within the two-year statute of limitation. *McIntyre*, 367 F.3d at 39.

## C. The Bailment Claim

In the third count of the complaint it is alleged that the Defendant became the bailee of the Property in question, failed to return said Property, and, as a

---

[3] That having been said, a valid argument can be made that such events were not conclusive enough to inform a reasonably diligent person in the Plaintiff's circumstances that the Government had lost the Property in question. *McIntyre*, 367 F.3d at 52. It is important to note that at every point prior to returning of Plaintiff's property, Plaintiff was explicitly told that the motorcycle was being withheld from him because it consisted of stolen parts. (#1, ¶¶ 12, 16) In light of these previous statements, Lafreniere could reasonably have believed that the Property was not returned in January of 2002 because the Government still believed it consisted of stolen parts. Consequently, a more appropriate accrual date may be September 9, 2002, the point in time when Lafreniere understood that the Property in question may have been negligently lost rather than merely being withheld. It was on that date that the Defendant explicitly stated that the Property could not be located and that it was no longer in the Government's possession. (#1, ¶22)

result, that the Plaintiff suffered damages in the amount of sixteen thousand dollars plus interest and costs. A bailment claim such as the one being brought by Plaintiff in the case at bar is a breach of an implied contract claim and should be brought pursuant to the Tucker Act, and not the FTCA.[4] *Hatzlachh Supply Co., Inc. v. United States*, 444 U.S. 460, 461 (1980). Under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over nontort claims against the Government for greater than $10,000. *Clinton v. Goldsmith*, 526 U.S. 529, 539 (1999); Title 28 U.S.C. §1491. Therefore, Plaintiff's bailment claim must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

---

[4] The Plaintiff acknowledges that this claim may be improper and suggests that perhaps it could be construed as a claim for conversion rather than bailment. (#12 at p. 3) This is unnecessary, however, since a claim for conversion is already alleged in the second count of the complaint.

*IV. Conclusion and Order*

For the reasons stated, it is ORDERED that the Defendant's Motion to Dismiss (#19) be, and the same hereby is, ALLOWED with respect to count three of the plaintiff's complaint, and otherwise, DENIED.

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

March 23, 2006.